UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMANA GLOBAL COMPANY, et al.,

Plaintiffs,

v.

KING COUNTY FLOOD CONTROL ZONE DISTRICT, et al.,

Defendants.

CASE NO. C22-1626JLR

ORDER

## I. INTRODUCTION

On April 6, 2023, the court ordered *pro se* Plaintiffs Amana Global Company ("Amana") and Hafid Tahraoui's (collectively, "Plaintiffs")[1] to show cause, by April 21, 2023, why the court should not conclude that Plaintiffs' claims are time-barred and dismiss this action. (4/6/23 Order (Dkt. # 39).) The court deferred ruling on Plaintiffs'

[1] Mr. Tahraoui is the owner of Amana, a sole proprietorship. (Compl. (Dkt. # 1) ¶¶ 1-2.)

pending motions to extend (1st MTE (Dkt. # 31); 2d MTE (Dkt. # 32)) and Defendants'[2] pending motions to dismiss (Pan Abode MTD (Dkt. # 26); KC MTD (Dkt. # 19); KC Flood MTD (Dkt. # 27)). (4/6/23 Order at 9; *see also id.* at 5 (noting that Defendants moved to dismiss Plaintiffs' claims on several grounds, including that Plaintiffs' claims are time-barred by the applicable three-year statute of limitations).)

Plaintiffs timely responded to the court's order to show cause. (*See generally* 1st Resp. (Dkt. # 42); *see also* 2d Resp. (Dkt. # 45).[3]) The court has considered Plaintiffs' responses, the relevant portions of the record, and the governing law. Being fully advised, the court DISMISSES Plaintiffs' claims against Defendants, DENIES as moot Plaintiffs' motions to extend, and DENIES as moot Defendants' motions to dismiss.

## II. BACKGROUND

Amana leased part of a warehouse and the yard space adjacent to it at 22230 Russell Road in Kent, Washington (the "Property") under a lease agreement that expired on August 31, 2021. (Compl. ¶ 14.) In May 2016, King County purchased the Property for the completion of the Lower Russell Levee Setback flood protection project (the "Project"). (*Id.* ¶¶ 13, 15.) On July 21, 2016, King County informed Plaintiffs and all

[2] Defendants include King County Flood Control Zone District ("KC Flood"); Pan Abode Homes, Inc. ("Pan Abode"); and King County, Josh Baldi, John Taylor, and Michael Murphy (collectively, "King County Defendants").

[3] The court admonishes Plaintiffs for filing a supplemental response in violation of the court's order denying their request for an extension of time to file an amended response to the court's show cause order. (*See* 4/24/23 Order (Dkt. # 44); 2d Resp.) However, the court will consider Plaintiffs' supplemental response in evaluating whether Plaintiffs' claims should be dismissed.

other tenants on the Property that it was in the process of acquiring the Property for the Project and that it would be necessary for all tenants to vacate the Property. (*Id.* ¶ 16.)

Beginning in the fall of 2017, Plaintiffs and King County began to negotiate the purchase of the remaining term of Amana's lease. (*Id.* ¶ 23; *see also id.* ¶¶ 16-22.) Because Plaintiffs and King County could not arrive at a mutually acceptable price, King County filed a condemnation action in King County Superior Court on July 11, 2018 (the "Condemnation Action"). (*Id.* ¶ 26; *see also id.* ¶¶ 24-25.) On October 12, 2018, the Superior Court issued an order of public use and necessity. (*Id.* ¶ 27.) On December 12, 2018, Amana appealed that order to the Washington Court of Appeals. (*Id.* ¶ 28.)

On March 20, 2019, Pan Abode, adverse to Mr. Tahraoui as "a judgment creditor" in an unrelated matter, "purchased Amana's interest in the [C]ondemnation [A]ction at a Sheriff's [s]ale auction, pursuant to a writ of execution."[4] (*Id.* ¶ 29; *see also* Pan Abode MTD, Ex. 3 (Mr. Tahraoui's letter to the Washington Court of Appeals and Related Sheriff Sale Documents).[5]) In April 2019, Mr. Tahraoui wrote a letter to the Washington Court of Appeals, on behalf of Amana, informing the court that Pan Abode had purchased Amana's interest in the Condemnation Action at a Sheriff auction and

[4] The court notes that Plaintiffs also allege that Pan Abode did not actually "acquire Amana's leasehold interest" because that interest "was neither included in the Sheriff's sale nor subject to execution." (Compl. ¶¶ 29, 31-32.) The court need not resolve this dispute because it does not impact the court's analysis in this order.

[5] The court takes judicial notice of this letter, which Mr. Tahraoui filed with the Washington Court of Appeals, as well as other court filings made in relation to the Condemnation Action. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

admitting that as a result, Amana was no longer a party in the appellate proceeding. (Pan Abode MTD, Ex. 3.) On May 8, 2019, the Court of Appeals granted Pan Abode's motion for substitution and Amana was dismissed from that appeal. (Compl. ¶ 30.) Pan Abode then filed a stipulation and motion to dismiss the appeal, which the Washington Court of Appeals granted in June 2019. (*Id.* ¶ 33.)

On September 4, 2019, the Superior Court issued an order substituting Pan Abode for Amana as the respondent in that condemnation action. (*Id.* ¶ 34.) On October 25, 2019, King County and Pan Abode filed a joint motion for entry of a stipulated final judgment and decree of appropriation in condemnation and order of disbursement (the "Final Judgment") and provided Plaintiffs with a copy of the motion. (*Id.* ¶ 35; KC MTD, Ex. 1 ("Stip. Mot. for Judgment").) On November 4, 2019, Amana filed a motion to intervene in the condemnation action to oppose the appropriation of Amana's leasehold interest to King County and King County's payment of $170,000 to Pan Abode as just compensation for that leasehold interest. (Compl. ¶¶ 35-36; KC MTD, Ex. 2 ("Mot. to Intervene").) On November 12, 2019, the Superior Court denied Amana's motion to intervene and entered the Final Judgment. (Compl. ¶ 36; KC MTD, Ex. 3 ("Final Judgment and Decree of Appropriation").)

On December 12, 2019, Amana appealed the trial court's denial of its motion to intervene and the entry of the Final Judgment. On January 28, 2020, the Washington Court of Appeals ruled that Amana lacked standing to appeal the order and judgment. (KC MTD, Ex. 4 (Mandate with the Court of Appeals Commissioner Ruling).) Amana then filed a petition for discretionary review with the Washington Supreme Court. The

Supreme Court, however, refused to grant review, concluding, as did the Court of Appeals, that Amana was not an aggrieved party and therefore lacked standing to prosecute the appeal. (*Id.*, Ex. 5 (Washington State Supreme Court Ruling Denying Review) ("Whatever interest [Amana] had in the condemnation matter at issue was transferred to Pan Abode by way of the sheriff's auction. . . . There is no showing that [Amana] retained a legally protected interest in this matter.").)

Plaintiffs commenced this action against Defendants on November 14, 2022. (*See generally* Compl.; Dkt.) They bring claims against Defendants under 42 U.S.C. § 1983, alleging that Defendants violated their rights under the Fourth, Fifth and Fourteenth Amendments. (Compl. at 7-10 (bringing 4 claims against KC Flood and the King County Defendants, and one claim against Pan Abode).) Each of Plaintiffs' claims arise from Defendants' involvement in the Condemnation Action, including the events preceding the action's initiation. (*See generally id.*)

As the court explained in its April 6, 2023 show cause order, Plaintiffs' 42 U.S.C. § 1983 claims are governed by a three-year statute of limitations, which began to accrue when Plaintiffs knew or had reason to know of the injury which is the basis of the action. (4/6/23 Order at 7.) Accordingly, because Plaintiffs filed this § 1983 lawsuit on November 14, 2022 (*see* Compl.), Plaintiffs' claims must have accrued after November 14, 2019, to be timely. (4/6/23 Order at 8.) The court went on to preliminarily conclude that Plaintiffs' claims are untimely because "[u]nder the most generous reading of the complaint, the very latest date that could have caused the three-year statute of limitations to start running was October 25, 2019," when Plaintiffs received a copy of King County

and Pan Abode's joint motion for entry of Final Judgment. (*Id.* (first citing KC MTD, Ex. 1; and then citing Compl. ¶ 35) ("Every fact alleged in Plaintiffs' complaint with respect to Defendants' involvement in the Condemnation Action, as well as the events preceding that action, occurred prior to November 14, 2019.").) In reaching that conclusion, the court also noted that, although the Superior Court did not deny Amana's motion to intervene and enter the Final Judgment until November 12, 2019, the Superior Court's actions are not relevant to the accrual of the statute of limitations because it is not a party to this action and to the extent Plaintiffs seek to challenge the Superior Court's orders and judgment, such challenges would likely be barred under the *Rooker-Feldman* doctrine. (*Id.* at 8 n.7 (first citing Compl. ¶ 36; and then citing *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010)).)

Because a trial court may dismiss a claim *sua sponte* under Federal Rule of Civil Procedure 12(b)(6) after giving notice and affording the plaintiffs an opportunity to be heard, *Wong v. Bell*, 642 F.2d 359, 361-62 (9th Cir. 1981) (noting that notice is not required if the plaintiff "cannot possibly win relief"), the court ordered Plaintiffs to show cause why the court should not dismiss Plaintiffs' claims as time-barred. (4/6/23 Order at 5-6.)

## III. ANALYSIS

Although Plaintiffs responded to the court's show cause order (*see* 1st Resp.; 2d Resp.), their responses fail to establish that their claims are proper.

//

//

**A. Timeliness of Plaintiffs' Claims**

Plaintiffs argue that their claims are timely because the claims did not accrue until November 12, 2019,[6] which is when the "[F]inal [J]udgment was entered and [Amana's] leasehold was appropriated." (2d Resp. at 3.) According to Plaintiffs, that is when they suffered an "actual injury," and their "prior knowledge" of King County and Pan Abode's joint motion for entry of Final Judgment is irrelevant. (*Id.* at 2-3; *see also id.* at 3-4 (raising numerous alternative arguments as to why this action is timely).)

Based on the case law cited by Plaintiffs and the manner in which Plaintiffs frame their injury, the court agrees that Plaintiffs' claims began to accrue on November 12, 2019,[7] when the Final Judgment was entered and Amana's motion to intervene was denied, and are therefore timely. *See* Fed. R. Civ. P. 6(a)(1) (discussing the calculation of time periods); *see, e.g.*, *Morales v. City of Los Angeles*, 214 F.3d 1151, 1154 (9th Cir. 2000) (holding that § 1983 claims based on police misconduct in a prior civil rights suit accrued when judgment was entered against plaintiffs in trial court).

---

[6] Although Plaintiffs contend that November 13, 2019 is the relevant date because the Final Judgment did not become effective until that date (2d Resp. at 2 n.1), there is nothing in the Final Judgment or record to support that contention (*see, e.g.*, Final Judgment and Decree of Appropriation). Even if it did become effective on November 13, 2019, and the statute of limitations began to accrue on that date, the court's conclusion regarding the timeliness of Plaintiffs' claims remains the same.

[7] If the last day of a limitations period falls on a Saturday or a Sunday, Federal Rule of Civil Procedure 6(a) provides that those days are not counted for the purposes of calculating the conclusion of the limitations period. *See* Fed. R. Civ. P. 6(a)(1); *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002) ("Since the last day of the two-year Oregon statute of limitations fell on a Sunday, Rule 6(a) provides that that day is not counted for purposes of [calculating the conclusion of the limitations period]."). Because November 12, 2022 fell on a Saturday, the statute of limitations did not run until Monday November 14, 2022.

**B. The *Rooker-Feldman* Doctrine**

Plaintiffs argue that their claims are not barred by *Rooker-Feldman* because "Plaintiffs were not a party in the condemnation action at the state court" and "Plaintiffs' claims were not raised in the condemnation action and do not attack directly the Judgment entered." (2d Resp. at 5.) For the reasons discussed below, the court disagrees.

Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to review the final determinations of a state court in judicial proceedings. *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415-16 (1923); *see also Doe & Assocs. L. Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) ("The purpose of the doctrine is to protect state judgments from collateral federal attack."). *Rooker-Feldman* applies when a "plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision," and "may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine 'prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment.'" *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (first quoting *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir.2007); and then quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)). A federal action is a *de facto* appeal where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the

district court to interpret the application of state laws or procedural rules." *Id.* (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)). In such circumstances, "the district court is in essence being called upon to review the state court decision." *Feldman*, 460 U.S. at 483 n.16.

Here, the court concludes that Plaintiffs' § 1983 claims constitute a *de facto* appeal of the Superior Court's order denying Amana's motion to intervene and its entry of the Final Judgment. In an effort to challenge King County and Pan Abode's joint motion for entry of Final Judgment, Amana argued that it should be permitted to intervene in the Condemnation Action because "Pan Abode cannot stipulate to the sale of Amana's leasehold interest when it is undisputed that Pan Abode has no interest whatsoever in said leasehold, and Amana is the sole owner of said leasehold."[8] (Mot. to Intervene at 10.) The Superior Court denied that motion,[9] thereby rejecting Amana's arguments, and entered the Final Judgment, which describes Pan Abode as the lawful holder of Amana's interest in the Condemnation Action and King County as the lawful purchaser of Amana's leasehold interest. (*See* Final Judgment and Decree of Appropriation.)

---

[8] Amana's motion to intervene raised essentially the same arguments that it raises here: (1) Amana is the sole owner of the leasehold interest; (2) Pan Abode purchased Amana's interest in the Condemnation Action but not its leasehold interest, and thus, has no right to sell the leasehold interest to King County in the Condemnation Action; (3) Pan Abode is not entitled to just compensation for the leasehold interest because it is not the lawful owner of the leasehold interest; and (4) King County acted in concert with Pan Abode to dismiss Amana from the Condemnation Action for the purpose of unlawfully acquiring Amana's leasehold interest. (*Compare* Mot. to Intervene, *with* Compl.)

[9] The parties all concede that the Superior Court denied the motion to intervene. (*See* Compl. ¶ 36; KC MTD at 4; Pan Abode MTD at 4-5; KC Flood MTD at 4; *see also* KC MTD, Exs. 4-5 (Washington Court of Appeals and Supreme Court decisions discussing the Superior Court's denial of the motion to intervene).)

In this action, Plaintiffs allege, among other things, that Pan Abode never owned Amana's leasehold interest and that King County thus wrongfully appropriated Amana's leasehold interest because Pan Abode had no right to transfer the interest. (*See* Compl. at 6-9.) Thus, to determine if Defendants violated Plaintiffs' constitutional rights with respect to the Condemnation Action, this court would necessarily have to review the Superior Court's orders and judgments authorizing Defendants' actions and declaring Defendants' rights. *See, e.g.*, *Reusser*, 525 F.3d at 859-60 (finding plaintiffs' claims alleging defendants engaged in extrinsic fraud in bringing about default judgment against them presented an impermissible *de facto* appeal because adjudicating plaintiffs' claims required the federal court to review state court decision denying plaintiffs' motion to vacate default judgment, which raised the same extrinsic fraud contentions). Additionally, although Plaintiffs do not directly attack the order denying Amana's motion to intervene and the Final Judgment, Plaintiffs' claims constitute a *de facto* appeal of such decisions because they are "inextricably intertwined" with those decisions.[10] *See, e.g.*, *Loumena v. Hammon*, No. 15-CV-03613-LHK, 2015 WL 7180679, at *6 (N.D. Cal. Nov. 16, 2015), *aff'd*, 671 F. App'x 447 (9th Cir. 2016) (finding *de facto* appeal where plaintiff challenged the distribution of proceeds of sale of property because in order to review whether the funds should have been distributed to plaintiff or his company, the court would have to review state court's orders directing the allocation of the funds).

[10] To some extent, Plaintiffs also necessarily attack the Washington Court of Appeals's dismissal of Amana's appeal and the Washington Supreme Court's denial of Amana's petition for review, which each acknowledged that Amana lacked an interest in the Condemnation Action. (*See* KC MTD, Ex. 4 at 2-3; *id.*, Ex. 5 at 3-4.)

Moreover, the court disagrees with Plaintiffs' contention that *Rooker-Feldman* does not bar their claims because they were not parties to the Condemnation Action. The court recognizes that the *Rooker-Feldman* doctrine is ordinarily applicable only to actions brought by federal plaintiffs who were parties in the previous state court action. *See Lance v. Dennis*, 546 U.S. 459, 466 & n.2 (2006). Here, Amana was a party to the Condemnation Action until it was substituted out following the sale of its interest to Pan Abode. (*See* Compl. ¶¶ 26-30, 33-34; Pan Abode MTD, Ex. 3; *see also supra* § II.) As the sole owner of Amana, and its representative in the Condemnation Action, Mr. Tahraoui was closely involved with the Condemnation Action. (*See, e.g.*, Compl. ¶¶ 1-2; Pan Abode MTD, Exs. 1-2 (discussing motions and appeals filed in Condemnation Action by Mr. Tahraoui); KC MTD, Exs. 4-5 (same).) Thus, although Plaintiffs were not a party to the Condemnation Action when the Final Judgment was entered, they were active litigants in that Action for the year preceding Pan Abode's purchase of Amana's interest and substitution into the Action. *See, e.g.*, *Loumena*, 2015 WL 7180679, at *6 (finding plaintiff's § 1983 claims barred by *Rooker-Feldman* because although plaintiff was not a named party in his parents' state court divorce proceedings, plaintiff was represented by an attorney in the proceedings and had an opportunity to participate in the proceedings through his company, which claimed an interest in certain property and was an active litigant in the portions of the state court action at issue in the federal litigation).

Additionally, Amana, through Mr. Tahraoui, opposed the Final Judgment and moved to intervene in the Condemnation Action prior to the Superior Court's entry of the Final Judgment. (*See* Mot. to Intervene; Compl. ¶ 36.) Amana also appealed the

Superior Court's denial of its motion to intervene and the issuance of the Final Judgment to the Washington Court of Appeals and Supreme Court. (*See* KC MTD, Exs. 4-5.) Accordingly, Plaintiffs were actively involved in the Condemnation Action with respect to the portions of that Action at issue here, and thus, the *Rooker-Feldman* doctrine applies to Plaintiffs' claims. *See, e.g.*, *Reusser*, 525 F.3d at 860 n.5 (concluding that even if one of the plaintiffs was not a party to the state court proceeding, *Rooker-Feldman* still applied because that plaintiff was a party to the motion seeking to vacate the default judgment and "it is that motion which is inextricably intertwined with the present action").

In sum, Plaintiffs' § 1983 claims are barred by the *Rooker-Feldman* doctrine and the court thus DISMISSES Plaintiffs' complaint without prejudice for lack of subject matter jurisdiction. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (noting that dismissal for lack of subject matter jurisdiction should be without prejudice); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981) (stating that the court can *sua sponte* dismiss action for lack of subject matter jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, the court DISMISSES Plaintiffs' complaint without prejudice and without leave to amend and DIRECTS the Clerk to close this case. The court further DENIES as moot Plaintiffs' motions to extend (Dkt. ## 31, 32) and Defendants' motions to dismiss (Dkt. ## 19, 26, 27).

//

Dated this 25th day of April, 2023.

JAMES L. ROBART
United States District Judge